**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

OMNIA MEDICAL, LLC,

     Plaintiff,

     vs.

PAINTEQ, LLC, SEAN LANEVE,
and CHARLES GIRSCH,

     Defendants.

_____/

**OMNIA MEDICAL, LLC'S**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

**INJUNCTIVE RELIEF SOUGHT**

Omnia Medical, LLC ("Omnia Medical") sues PainTEQ, LLC ("PainTEQ"),

Sean LaNeve, and Charles Girsch, and alleges as follows:

**Introduction**

1.    In this case, Omnia Medical asserts claims against PainTEQ and the

individual defendants for perpetrating a fraudulent payment scheme wherein it

deliberately misrepresented the prices it sold Omnia Medical's products under the

parties' distribution and sales contract ("Stocking Agreement") to surgical

facilities — including, but not limited to, facilities owned by one or more

physicians with an undefined or undisclosed beneficial interest in PainTEQ in

violation of the Stocking Agreement and the Physician Payments Sunshine Act

and implementing regulations— at a much lower price than it actually sold them. PainTEQ pocketed the difference between the actual sales price and the lower price that it represented to Omnia Medical; thereby financing the startup of PainTEQ through illicit conduct.  Thus, PainTEQ's and the individual defendant's deceit regarding the product pricing caused, and continues to cause, Omnia Medical damages and harm in the market.  Before engaging in the fraudulent payment scheme, PainTEQ fraudulently induced Omnia Medical into entering a business relationship to gain access to Omnia Medical's proprietary and trade secret information, some of which it blatantly reverse engineered and copied to create its own products and literature. PainTEQ was, is, and continues to use Omnia Medical's proprietary and trade secret information to unfairly and unjustly compete with Omnia Medical.  Were it not for the use of Omnia Medical's stolen funds and proprietary and trade secret information, PainTEQ may not even exist as a competitor to Omnia Medical today.

2.      Omnia Medical also asserts claims for patent infringement under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin infringement and obtain damages resulting from PainTEQ's unauthorized and ongoing willful actions of making, using and selling and/or having products made or sold that infringe and/or induce the infringement of one or more claims of U.S. Design Patent No. D922,568 (the 'D568 Patent), and U.S. Patent No. 11,083,511 (the '511

2

Patent).

## Parties, Jurisdiction, and Venue

3.      Omnia Medical is an Ohio limited liability company with its principal place of business in Morgantown, West Virginia, and other corporate offices located in Powell, Ohio.  All members of Omnia Medical are individual persons who are citizens of the states of Ohio, West Virginia and California.

4.      PainTEQ is a Florida limited liability company with its principal place of business in Tampa, Florida.  Based upon a reasonable investigation conducted before filing this Complaint, Omnia Medical believes and therefore alleges that the members of PainTEQ are: (i) OMT Group, LLC, a Florida limited liability company, and (ii) Colty Investments Group, Inc., a Florida corporation with its principal place of business in Florida.

a.      Based on a reasonable investigation conducted before filing this Complaint, Omnia Medical believes and therefore alleges that the sole member and manager of OMT Group, LLC is Sean LaNeve, who is a citizen of the State of Florida.

b.      Omnia Medical is informed and believes and therefore alleges that at all times herein mentioned, Mr. LaNeve was an agent of PainTEQ, and, in doing the things herein alleged, was acting in the scope of such agency and with the permission and consent of PainTEQ.

{03857864 - 1}

c.      Based on a reasonable investigation conducted before filing this Complaint, Omnia Medical believes and therefore alleges that Charles Girsch, a citizen of the State of Florida, was an agent of PainTEQ, and, in doing the things herein alleged, was acting in the scope of such agency and with the permission and consent of PainTEQ.

d.      Based on a reasonable investigation conducted before filing this Complaint, Omnia Medical believes and therefore alleges that Michael Enxing, a citizen of the State of Florida, may also have a direct or indirect ownership interest in PainTEQ based on his recent appointment to the PainTEQ Board of Directors. Therefore, PainTEQ is deemed to be a citizen of the State of Florida.

e.      Omnia Medical believes and therefore alleges that any other members of PainTEQ are citizens of states other than Ohio, West Virginia, and California.

5.      Jurisdiction and venue are proper in this Court.

### Background & Material Facts

**A.      Omnia Medical's PsiF System and PainTEQ's LinQ System**

6.      Omnia Medical develops novel products that reduce operative time through safe and reproducible instrumentation, while achieving superior surgical outcomes. It produces, sells, and distributes the PsiF™ System for use in surgical procedures for sacroiliac ("SI") joint repair. The PsiF™ System includes

4

components designed to practice the method of at least one claim of the '511 Patent. Omnia Medical distributes its PsiF™ Surgical Technique Guide to its customers to provide instructions for using its PsiF™ System.

7.     Omnia Medical is the exclusive licensee of intellectual property owned by Orthocision, including the 'D568 Patent, the '511 Patent, U.S. Patent No. 10,426,539 (the '539 Patent), U.S. Patent No. D905,232 (the 'D232 Patent), U.S. Registration Nos. 4,646,387 (the '387 Registration), and 4,646,388 (the '388 Registration), Copyright Registration Nos. VA 2-209-321 (the '321 Registration) and VA 2-212-904 (the '904 Registration).[1] As the exclusive licensee, Omnia Medical has the right to, *inter alia*, use the licensed intellectual property and to enforce, litigate, initiate court proceedings, and/or settle all past, present, and future claims arising from or related to the licensed intellectual property.

8.     PainTEQ manufactures, sells, and offers to sell products for use in surgical procedures for SI joint repair and joint fusion, including the LinQ™ SI Joint Stabilization System (the LinQ™ Products). The LinQ™ Products are unlicensed and unauthorized copies or near copies of Omnia Medical's PsiF™ System tools.

---

[1] Omnia Medical is currently pursuing claims arising out of the '539 Patent, 'D232 Patent, '387 Registration, '388 Registration, '321 Registration and '904 Registration in Case No. 20-02805-VMC-AAS pending in the United States District Court for the Middle District of Florida. The Court denied Omnia Medical's request for leave to amend the previously filed Complaint to add the patent infringement claims alleged in this Complaint. *See* Doc. 59 in Case No. 20-02805.

{03857864 - 1}

9.      According to its website, PainTEQ provides "bioskills training and certification for our procedures." **Exhibit 1** (page from painteq.com retrieved on 11/25/2020). A surgical cannula is among the products included in the LinQ™ SI Joint Stabilization System. PainTEQ distributes a Surgical Technique Guide to its customers and/or potential customers to provide instructions for using its LinQ™ Products.

**B.      The Stocking Agreement and PainTEQ's Fraudulent Conduct**

10.     Beginning in or about December 2016, and before PainTEQ began offering the LinQ™ products, Omnia Medical and PainTEQ entered into discussions about forming a working relationship.

11.     Specifically, on or around December 12, 2016, PainTEQ, through its agent, Charles Girsch, first contacted Omnia Medical to inquire about becoming a distributor of Omnia Medical's products and the PsiF™ System.

12.     In response to PainTEQ's initial inquiry, on December 12, 2016, Omnia Medical, through its agent, Steve Anderson, sent an email to PainTEQ's agent, Charles Girsch, providing information about Omnia Medical and its PsiF™ System. In response, on December 13, 2016, Mr. Girsch replied with "Looks great! How do we move forward?" A copy of this email correspondence is attached as **Exhibit 2.**

13.     Following their initial exchange of information, PainTEQ and Omnia

Medical continued to discuss forming a working relationship. During these discussions, PainTEQ, through Charles Girsch, made numerous fraudulent representations regarding its intent to sell Omnia Medical's products at top line prices. One email on December 13, 2016 shows Mr. Girsch representing "[W]e will buy for the same costs the hospital buys for so you get full sales numbers." *See* Exhibit 2, pg. 2. This was false.

14.     Mr. Girsch also insisted on receiving a PsiF™ System set before entering into a business relationship with Omnia Medical on the premise that he intended to sell the PsiF™ System in good faith. *See* Exhibit 2. This was false. Instead, Mr. Girsch wanted a PsiF™ System set so PainTEQ could begin stealing Omnia Medical's intellectual property for PainTEQ's use.  Omnia Medical was unaware of PainTEQ's nefarious intent at the time.

15.     Effective April 1, 2017, Omnia Medical and PainTEQ entered into a distribution and sales agreement ("Stocking Agreement"), a copy of which is attached as **Exhibit 3**. Under the Stocking Agreement, Omnia Medical was to "develop and provide products compliant with applicable FDA Quality System Requirements," and PainTEQ was to "continuously and actively pursue the marketing of provided product(s) in the respective territory for the purpose of market penetration and satisfaction of the general agreement between OMNIA and PAINTEQ." **Exhibit 3**, §§ 2 and 3.

16.     Section 6 of the Stocking Agreement provided the procedure governing PainTEQ's purchase of Omnia Medical's products via separate purchase orders as follows:

> **6. Purchase Orders**
> Prior to purchasing Products, PAINTEQ shall provide OMNIA with a firm purchase order specifying the Products it desires to purchase and a desired shipment date for the Products. Such purchase order, upon acceptance by OMNIA, shall be deemed to be Incorporated into this Agreement and any conflicts between the purchase order and the terms of this Agreement shall be governed by the term of this Agreement. OMNIA shall have seven (7) days to notify PAINTEQ of rejection of such purchase order. OMNIA shall not have any liability arising from the rejection of any purchase order provided that such rejection was delivered within such 7-day notice period. If no notice of rejection is given, the binding order shall be considered accepted by OMNIA and OMNIA shall make commercially reasonable efforts to fill such purchase order with Products within the scheduled delivery times set forth on such order.

**Exhibit 3,** § 6.

17.     Pursuant to the Section 6 of the Stocking Agreement, each purchase order was a separate offer for purchase that Omnia Medical was entitled to accept or reject, with each becoming a binding order upon Omnia Medical's acceptance of the terms and pricing of each.

18.     Pursuant to the terms of the Stocking Agreement, PainTEQ would earn a commission on the Omnia Medical products it sold based on a percentage

{03857864 - 1}

of the sales price. **Exhibit 3**, Ex. B (pg. 6).

19.    Section 3 of the Stocking Agreement further provided that "[a]ll literature and marketing information supporting said product is property of OMNIA and must be returned to OMNIA upon OMNIA's request." **Exhibit 3**, § 3.

20.    Section 10 of the Stocking Agreement further imposed various obligations of confidentiality between Omnia Medical and PainTEQ, and non-use of Confidential Information by PainTEQ, including as follows:

> All confidential or proprietary information furnished . . . by OMNIA to PAINTEQ or any of its affiliates, during the term of this Agreement, ("Confidential Information") including, without limitation, any specification, design information, Product information, quality assurance plans, marketing strategies, business plans and strategies, Inventions (whether or not the subject of Patents), trade secrets, know-how, cost and profit data, distribution and marketing plans, and business and financial information, shall be kept confidential by the party receiving it. The party receiving Confidential Information shall not disclose it or make use of it, except for purposes authorized by this Agreement, nor disclose any Confidential Information to any person or firm unless previously authorized in writing to do so; provided, however, that the receiving party may disclose it as necessary to responsible officers, employees and agents for the purposes of performing its obligations under this Agreement, provided that such employees, officers and agents shall have assumed like obligations of confidentiality in writing. . . .
>
> Except as required by law, PAINTEQ and OMNIA shall keep the existence and terms of this Agreement, as well

> as any discussions and/or materials provided in connection herewith, strictly confidential, and shall each make all reasonable efforts to maintain such confidentiality, including restricting PAINTEQ's officers, employees and representatives access to the terms of this Agreement on a "need to know" basis, limiting copies and ensuring that all parties agree to the confidential nature of this Agreement.

**Exhibit 3**, § 10.

21.     Under the Stocking Agreement, PainTEQ earned a commission based on the reported sales prices for which PainTEQ sold Omnia Medical's products.

22.     On July 23, 2018, Sean LaNeve, acting on behalf of PainTEQ, falsely and fraudulently represented to Omnia Medical via email that PainTEQ had agreed to reduced pricing on the PsiF™ System with its customers, various surgical facilities (the "Reduced Pricing"). Specifically, in response to Omnia Medical's questions about a drop in pricing, Mr. LaNeve stated: "Negotiations have stalled so I agreed to a 4K price for the latest round of cases. . . Their reimbursement is fixed so they want a fixed price for our kit to lock in their profitability." A copy of Mr. LaNeve's July 2018 email (the "July 2018 Email") and the subject purchase order is attached as **Composite Exhibit 4.**

23.     PainTEQ's representations regarding the Reduced Pricing were false at the time they were made. At no point had Mr. LaNeve "agreed to a 4K price" with any surgical facility, and after the July 2018 email, PainTEQ sold Omnia

{03857864 - 1}

Medical's PsiF™ System for substantially more than $4,000 per unit.[2]

24.     PainTEQ doubled down on this lie in October 2018.  Specifically, on October 17, 2018, Mr. LaNeve represented to Omnia Medical that, "[w]e are locked in to the $4,000 pricing as most of our [customers] are owned by the same group. I understand its not the price we want but its still well above our contract "floor" of $2,500." A copy of Mr. LaNeve's October 2018 email (the "October 2018 Email") and the subject purchase order is attached as **Composite Exhibit 5.**

25.     As evidenced by Composite Exhibit 4 and Composite Exhibit 5, Charles Girsch, PainTEQ's Executive Vice President, was copied on the July 2018 emails and the October 2018 email, and in fact participated in the conversation with Omnia Medical, was aware of Mr. LaNeve's false representations regarding pricing, but failed and/or refused to correct Mr. LaNeve's fraudulent representations.

26.     The representations in the October 2018 emails also were not true. PainTEQ was not, nor had it ever been, "locked in to the $4,000 pricing" as Mr. LaNeve represented in his October 2018 email. Instead, PainTEQ's customers were still agreeing to a higher price and PainTEQ was selling Omnia Medical's PsiF™ System for more than $4,000 per unit during and after Mr. LaNeve sent the October

---

[2] Omnia Medical has evidence demonstrating PainTEQ sold the units for more than $4,000. However, a Confidentiality Agreement signed in Case No. 20-02805 precludes Omnia Medical from including that documentation with this Complaint.

{03857864 - 1}

2018 Email.[3]

27.     Over a period of several months, PainTEQ, through its agents Sean LaNeve and Charles Girsch, submitted numerous purchase orders reflecting the Reduced Pricing, which Omnia Medical accepted on numerous occasions (the "Purchase Orders") based on the false representation that PainTEQ could not get surgical facilities to agree to any price higher than the Reduced Price. These Purchase Orders include, among others, the purchase orders included in **Composite Exhibits 4 & 5** referenced above.

28.     PainTEQ repeatedly, pervasively, falsely and deliberately represented that it sold products for lower amounts than it actually sold them in furtherance of its scheme to defraud Omnia Medical and to induce Omnia Medical to accept each separate Purchase Order PainTEQ submitted.

29.     PainTEQ earned a percentage for its commission based upon its falsified sales price.  Additionally, PainTEQ retained the entirety of the difference in the amount it actually sold the products for and the lower amount that it represented to Omnia Medical that it sold the product.  Thus, by engaging in the fraudulent pricing scheme, PainTEQ earned more money off the sale of the PsiF™ products than it would have under the commission pricing schedule found in the

---

[3] As before, Omnia Medical has documentation supporting this allegation that it cannot attach due to the Confidentiality Agreement.

{03857864 - 1}

Stocking Agreement.

**C.      PainTEQ's Unlicensed and Unlawful Use of Omnia Medical's Intellectual Property**

30.      Solely because it entered into the Stocking Agreement with Omnia Medical, PainTEQ had access to and knowledge of the PsiF™ Surgical Technique Guide, the PsiF™ System, and other intellectual property owned or licensed by Omnia Medical. As part of the process of negotiating the Stocking Agreement with PainTEQ, Omnia Medical disclosed its intellectual property holdings, including the subject matter of the application that matured into the '511 Patent.

31.      PainTEQ, among other things, sent pictures of Omnia Medical's tools and equipment for the PsiF™ System to a manufacturer and asked them to reverse engineer and replicate them in full in order to steal Omnia Medical's design for PainTEQ's future use with its LinQ™ System.

32.      On or about February 19, 2019, PainTEQ terminated the Stocking Agreement.

33.      Omnia Medical later learned that PainTEQ was selling equipment substantially similar (or identical) to Omnia Medical's. In addition, PainTEQ was distributing a Surgical Technique Guide that used images of equipment identical to Omnia Medical's.  In fact, the LinQ™ Surgical Technique Guide included text and images copied from Omnia Medical's Surgical Technique Guide, including copied images of five of six drawings of tools from Omnia Medical's PsiF™ System

13

and the copying of Omnia Medical's trademarked name for one of those products.

34.     Upon information and belief, either PainTEQ as an entity, or some or all of its assets—including the LinQ™ system—are being marketed for sale.  If the sale is closed and the proceeds from the sale distributed, Omnia Medical may have no means of recovery from PainTEQ's fraudulent conduct and infringement on Omnia Medical's intellectual property.

**COUNT I**
**Fraud in the Inducement – Stocking Agreement – PainTEQ**

35.     Omnia Medical incorporates and realleges paragraphs 1 through 34 as if fully rewritten here.

36.     Charles Girsch, as Vice President of PainTEQ, falsely and fraudulently represented that PainTEQ desired to establish a business relationship with Omnia Medical, and ultimately enter into the Stocking Agreement, in order to sell Omnia Medical's products in good faith in furtherance of the business relationship and the success of both companies.

37.     Despite these representations, PainTEQ never intended to perform under the Stocking Agreement or in the best interest of Omnia Medical. Instead, it fraudulently induced Omnia Medical to enter into the Stocking Agreement in order to gain access to Omnia Medical's confidential intellectual property, to steal Omnia Medical's confidential intellectual property for PainTEQ's use and benefit, and to damage Omnia Medical's ability to compete or even exist in the SI Joint

14

Market.  Further, it intended to, and did, conceal its physician ownership in violation of the Physician Payments Sunshine Act, which further damaged Omnia Medical.

38.    PainTEQ knew at the time it made the repeated fraudulent representations that they were in fact false and that it had no intention of honoring its promises, which were false at the time they were made.

39.    PainTEQ, through its agents, made these representations knowing them to be false and with the intent to defraud and deceive Omnia Medical to enter into the Stocking Agreement with PainTEQ,  to induce Omnia Medical to share its confidential intellectual property with PainTEQ, to steal Omnia Medical's confidential intellectual property for PainTEQ's use and benefit, and to prevent Omnia Medical from attempting to sell directly to the surgery centers in order to damage Omnia Medical's ability to compete in the SI Joint Market.

40.    Omnia Medical, at the time PainTEQ made the above fraudulent representations and at the time Omnia Medical agreed to enter into the Stocking Agreement, had no knowledge as to the falsity of PainTEQ's representations and believed them to be true.

41.    In reliance on these representations, Omnia Medical was induced to enter into the Stocking Agreement. Had Omnia Medical known the actual facts, that PainTEQ only intended to steal Omnia Medical's confidential intellectual

15

property and damage Omnia Medical's ability to compete in the SI Joint Market, it would not have agreed to enter into the Stocking Agreement.

42.      Omnia Medical's reliance on PainTEQ's representations was justified because Omnia had no reason to believe PainTEQ's representations were false and any company in Omnia Medical's position would have reasonably and justifiably relied on what appeared to be good faith representations.

43.      As a direct and proximate result of PainTEQ's fraud and deceit, Omnia Medical has sustained financial damages.

44.      PainTEQ's actions and/or inactions and concealment were intentional, willful, wanton, malicious and performed with a reckless disregard for Omnia Medical's rights and, therefore, Omnia Medical reserves the right to seek to amend this Complaint at the appropriate time to allege punitive damages against PainTEQ pursuant to section 768.72, Fla. Stat.

**WHEREFORE**, Omnia Medical requests the Court to:

A.      Enter judgment in favor of Omnia Medical, finding that PainTEQ fraudulently induced Omnia Medical to enter into the Stocking Agreement;

B.      Award Omnia Medical damages flowing from PainTEQ's fraudulent inducement;

C.      Award Omnia Medical pre and post-judgment interest;

D.      Enjoin PainTEQ and/or its members from distributing or dissipating

16

the proceeds of the sale until the merits of Omnia Medical's claims have been determined;

E.     Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to PainTEQ's fraudulent conduct; and

F.     For such further relief as the Court deems just and proper.

## COUNT II
## Fraud in the Inducement – Stocking Agreement – Charles Girsch

45.     Omnia Medical incorporates and realleges paragraphs 1 through 34 as if fully rewritten here.

46.     Charles Girsch falsely and fraudulently represented to Omnia Medical that PainTEQ desired to establish a business relationship with Omnia Medical, and ultimately enter into the Stocking Agreement, in order to sell Omnia Medical's products in good faith in furtherance of the business relationship and the success of the companies.

47.     Despite Mr. Girsch's representations, he never intended for PainTEQ to perform under the Stocking Agreement or in the best interest of Omnia Medical. Instead, he fraudulently induced Omnia Medical to enter into the Stocking Agreement in order to gain access to Omnia Medical's confidential intellectual property, to steal Omnia Medical's confidential intellectual property for his own use and benefit, and to damage Omnia Medical's ability to compete or even exist

17

in the SI Joint Market.

48.     Mr. Girsch knew at the time he made the representations that they were in fact false and that he had no intention of honoring his promises, which were false at the time they were made.

49.     Mr. Girsch made these representations knowing them to be false and with the intent to defraud and deceive Omnia Medical, to enter into the Stocking Agreement with PainTEQ, to induce Omnia Medical to share its confidential intellectual property, to steal Omnia Medical's confidential intellectual property for his own use and benefit, and to prevent Omnia Medical from attempting to sell directly to the surgery centers in order to damage Omnia Medical's ability to compete in the SI Joint Market.

50.     Omnia Medical, at the time Mr. Girsch made the above fraudulent representations and at the time Omnia Medical agreed to enter into the Stocking Agreement, had no knowledge as to the falsity of Mr. Girsch's representations and believed them to be true.

51.     In reliance on these representations, Omnia Medical was induced to enter into the Stocking Agreement. Had Omnia Medical known the actual facts, that Mr. Girsch only intended to steal Omnia Medical's confidential intellectual property and damage Omnia Medical's ability to compete in the SI Joint Market, it would not have agreed to enter into the Stocking Agreement.

{03857864 - 1}

52.     Omnia Medical's reliance on Mr. Girsch's representations was justified because Omnia had no reason to believe Mr. Girsch's representations were false and any company in Omnia Medical's position would have reasonably and justifiably relied on what appeared to be good faith representations.

53.     As a direct and proximate result of Mr. Girsch's fraud and deceit, Omnia has sustained financial damages.

54.     Mr. Girsch's actions and/or inactions and concealment were intentional, willful, wanton, malicious and performed with a reckless disregard for Omnia Medical's rights and, therefore, Omnia Medical reserves the right to seek to amend this Complaint at the appropriate time to allege punitive damages against Mr. Girsch pursuant to section 768.72, Fla. Stat.

**WHEREFORE**, Omnia Medical requests the Court to:

A.      Enter judgment in favor of Omnia Medical, finding that Charles Girsch fraudulently induced Omnia Medical to enter into the Stocking Agreement;

B.      Award Omnia Medical damages flowing from Charles Girsch's fraudulent inducement;

C.      Award Omnia Medical pre and post-judgment interest;

D.      Enjoin PainTEQ and/or its members from distributing or dissipating the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ and Girsch have been determined;

19

{03857864 - 1}

E.     Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to Girsch's fraudulent conduct; and

F.     For such further relief as the Court deems just and proper;

## COUNT III
## Fraud in the Inducement – Purchase Orders - PainTEQ

55.     Omnia Medical incorporates and realleges paragraphs 1 through 34 as if fully rewritten here.

56.     Mr. LaNeve, acting on and behalf of PainTEQ, repeatedly falsely and fraudulently represented to Omnia Medical that PainTEQ had agreed to sell the PsiF™ System for the Reduced Pricing of $4,000 per unit. These representations include, but are not limited to, those evidenced in Composite Exhibits 4 & 5.

57.     These representations were false each time they were made. PainTEQ never intended to charge the Reduced Pricing and actually charged the surgical facilities an amount well above the Reduced Pricing it represented to Omnia Medical it was charging on each Purchase Order it submitted. *See* FN 1 & 2.

58.     On numerous occasions PainTEQ submitted Purchase Orders reflecting the Reduced Pricing despite the fact that it knew it had already charged or would charge the surgical facility a higher price than that reflected on the submitted Purchase Order. These Purchase Orders include, but are not limited to, those evidenced in Composite Exhibits 4 & 5.

{03857864 - 1}

59.     PainTEQ, through its agents, made these representations knowing them to be false, with the intent to defraud and deceive Omnia Medical, and to induce Omnia Medical to agree to the Reduced Pricing for each separate Purchase Order and ultimately accept each separate Purchase Order including, but not limited to, those evidenced in Composite Exhibits 4 & 5.

60.     These representations were false at the time PainTEQ represented that they were locked into the Reduced Pricing and at the time it submitted each Purchase Order.

61.     Omnia Medical, each time PainTEQ made the above representations, and each time Omnia Medical accepted a Purchase Order with the Reduced Pricing, had no knowledge as to the falsity of PainTEQ's representations and believed them to be true.

62.     In reliance on these representations, Omnia Medical was induced to agree to the Reduced Pricing and accept numerous separate Purchase Orders, including, among others, those evidenced in Composite Exhibits 4 & 5.

63.     Had Omnia Medical known the facts—that PainTEQ had not agreed to the Reduced Pricing with any of its customers and that PainTEQ was charging its customers well over the amount reflected in the submitted Purchase Orders—it would not have agreed to the Reduced Pricing or agreed to accept each separate Purchase Order.

{03857864 - 1}

64.     Omnia Medical's reliance on PainTEQ's representations was justified because PainTEQ had superior knowledge of facts material to the subject transactions due to the PainTEQ's role as the sales agent of the PsiF™ System to the subject surgical facilities and PainTEQ's exclusive dealings with the surgical facilities in its sales agent capacity.

65.     As a direct and proximate result of PainTEQ's fraud and deceit, Omnia has sustained financial damages.

66.     PainTEQ's actions and/or inactions and concealment were intentional, willful, wanton, malicious and performed with a reckless disregard for Omnia Medical's rights and, therefore, Omnia Medical reserves the right to seek to amend this Complaint at the appropriate time to allege punitive damages against PainTEQ pursuant to section 768.72, Fla. Stat.

**WHEREFORE**, Omnia Medical requests the Court to:

A.     Enter judgment in favor of Omnia Medical, finding that PainTEQ made fraudulently induced Omnia Medical to accept each separate Purchase Order;

B.     Award Omnia Medical damages flowing from PainTEQ's fraudulent inducement;

C.     Award Omnia Medical pre and post-judgment interest;

D.     Enjoin PainTEQ and/or its members from distributing or dissipating

22

the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ have been determined;

E.      Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to PainTEQ's fraudulent conduct; and

F.      For such further relief as the Court deems just and proper;

**COUNT IV**
**Fraud in the Inducement – Purchase Orders – Sean LaNeve**

67.      Omnia Medical incorporates and realleges paragraphs 1 through 34 as if fully rewritten here.

68.      Mr. LaNeve repeatedly falsely and fraudulently represented to Omnia Medical that PainTEQ had agreed to sell the PsiF™ System for the Reduced Pricing of $4,000 per unit. These representations include, but are not limited to, those evidenced in Composite Exhibits 4 & 5.

69.       The above representations made by Mr. LaNeve were in fact false each time they were made. PainTEQ never intended to charge the Reduced Pricing and was actually charging the surgical facilities an amount well above the Reduced Price they represented to Omnia Medical they were selling PSIF™. *See* FN 1 & 2.

70.      On numerous occasions Mr. LaNeve submitted Purchase Orders reflecting the Reduced Pricing despite the fact that he knew he had already

23

charged or would charge the surgical facility a higher price than that reflected on the submitted Purchase Order. These Purchase Orders include, but are not limited to, those evidenced in Composite Exhibits 4 & 5

71.     Mr. LaNeve made these representations knowing them to be false and with the intent to defraud and deceive Omnia Medical and to induce Omnia Medical to agree to the Reduced Pricing for each separate Purchase Order and ultimately accept each separate Purchase Order including, but not limited to, those evidenced in Composite Exhibits 4 & 5.

72.     These representations were false at the time Mr. LaNeve represented that PainTEQ was locked into the Reduced Pricing and at the time he submitted each Purchase Order with Reduced Pricing.

73.     Omnia Medical, each time Mr. LaNeve made the above representations, and each time Omnia Medical accepted a Purchase Order with the Reduced Pricing, had no knowledge as to the falsity of Mr. LaNeve's representations and believed them to be true.

74.     In reliance on these representations, Omnia Medical was induced to agree to the Reduced Pricing and accept numerous separate Purchase Orders, including, among others, those evidenced in Composite Exhibits 4 & 5.

75.     Had Omnia Medical known the facts—that PainTEQ had not agreed to the Reduced Pricing with any of its customers and that PainTEQ was charging

24

its customers well over the amount reflected in the submitted Purchase Orders—it would not have agreed to the Reduced Pricing or agreed to accept each separate Purchase Order.

76.     Omnia Medical's reliance on Mr. LaNeve's representations was justified because Mr. LaNeve had superior knowledge of facts material to the subject transactions due to his role as the sales agent of the PsiF™ System to the subject surgical facilities and his exclusive dealings with the surgical facilities in his sales agent capacity.

77.     As a direct and proximate result of Mr. LaNeve's fraud and deceit, Omnia Medical has sustained financial damages.

78.     Mr. Laneve's actions and/or inactions and concealment were intentional, willful, wanton, malicious and performed with a reckless disregard for Omnia Medical's rights and, therefore, Omnia Medical reserves the right to seek to amend this Complaint at the appropriate time to allege punitive damages against Mr. LaNeve pursuant to section 768.72, Fla. Stat.

**WHEREFORE**, Omnia Medical requests the Court to:

A.      Enter judgment in favor of Omnia Medical, finding that Mr. LaNeve fraudulently induced Omnia Medical into each Purchase Order;

B.      Award Omnia Medical damages flowing from Mr. LaNeve's fraudulent inducement;

25

C.      Award Omnia Medical pre and post-judgment interest;

D.      Enjoin PainTEQ and/or its members from distributing or dissipating the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ and Mr. LaNeve have been determined;

E.      Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to LaNeve's fraudulent conduct; and

F.      For such further relief as the Court deems just and proper.

## COUNT V
## Fraud in the Inducement – Purchase Orders– Charles Girsch

79.     Omnia Medical incorporates and realleges paragraphs 1 through 34 as if fully rewritten here.

80.     Mr. LaNeve repeatedly falsely and fraudulently represented to Omnia Medical that PainTEQ had agreed to sell the PsiF System for the Reduced Pricing of $4,000 per unit. These representations include, but are not limited to, those evidenced in Composite Exhibits 4 & 5.

81.      The above representations made by Mr. LaNeve were in fact false each time they were made. PainTEQ never intended to charge the Reduced Pricing and actually charged the surgical facilities an amount well above the Reduced Pricing it represented to Omnia Medical it was charging on each Purchase Order it submitted. *See* FN 1 & 2.

26

82.     At the time Mr. LaNeve made the above representations to Omnia Medical, Mr. Girsch was aware but did not inform Omnia Medical that Mr. LaNeve's representations were false and made with the intent to defraud and deceive Omnia Medical, and to induce Omnia Medical to agree to the Reduced Pricing and ultimately accept each separate Purchase Order.  Mr. Girsch was copied on the July 2018 Emails and October 2018 Emails. *See* Composite Exhibits 4 & 5. In fact, Mr. Girsch participated in the October 2018 email conversation with Omnia Medical regarding the Reduced Pricing.  *See* Composite Exhibit 5, pg. 5.

83.     The suppression of the fact that the Reduced Pricing was not actually the agreed-upon price or requested by the subject surgical facilities was likely to mislead Omnia Medical and did mislead Omnia Medical.

84.     Mr. Girsch suppressed this information with the intent to induce Omnia Medical to agree to the Reduced Pricing and accept each separate Purchase Order.

85.     Omnia Medical, at the time of Mr. Girsch's failure to disclose and suppressions of facts occurred, was unaware of the existence of the fact that Mr. Girsch suppressed and failed to disclose.

86.     Had Omnia Medical been aware that PainTEQ was not charging and did not intend to charge the subject surgical facilities the Reduced Pricing for the PsiF™ System, it would not have agreed to the Reduced Pricing or accepted each

27

Purchase Order.

87.     Additionally, on numerous occasions Mr. Girsch submitted Purchase Orders reflecting the Reduced Pricing despite the fact that that he knew he had already charged or would charge the surgical facility a higher price than that reflected on the submitted Purchase Order. These Purchase Orders include, but are not limited to, those evidenced in Composite Exhibit 5.

88.     Mr. Girsch made these representations knowing them to be false, with the intent to defraud and deceive Omnia Medical, and to induce Omnia Medical to agree to the Reduced Pricing for each separate Purchase Order and ultimately accept each separate Purchase Order including, but not limited to, the Purchase Order evidenced in Composite Exhibit 5.

89.     These representations were false at the time Mr. Girsch submitted each Purchase Order with the Reduced Pricing. *See* FN 1 & 2.

90.     Omnia Medical, each time Mr. Girsch made the above representations, and each time Omnia Medical accepted a Purchase Order with the Reduced Pricing, had no knowledge as to the falsity of Mr. Girsch's representations and believed them to be true.

91.     In reliance on these representations, Omnia Medical was induced to agree to the Reduced Pricing and accept numerous separate Purchase Orders, including, among others, that evidenced in Composite Exhibits 5.

{03857864 - 1}

92.     Had Omnia Medical known the actual facts—that PainTEQ had not agreed to the Reduced Pricing with any of its customers and that PainTEQ was charging its customers well over the amount reflected in the submitted Purchase Orders—it would not have agreed to the Reduced Pricing or agreed to accept each separate Purchase Order.

93.     Omnia Medical's reliance on Mr. Girsch's failure to disclose and his representations was justified because at the time of Mr. Girsch's failure to disclose, suppression of facts, and each time he submitted a Purchase Order reflecting the Reduced Pricing, Mr. Girsch had exclusive and superior knowledge of the facts material to the subject transactions due to his role as a sales agent of the PsiF™ System to the subject surgical facilities and his exclusive dealings with the surgical facilities in his sales agent capacity.

94.     As a direct and proximate result of Mr. Girsch's fraudulent suppression of material information regarding the Reduced Pricing, Omnia has sustained financial damages.

95.     As a direct and proximate result of Mr. Girsch's fraudulent submission of Purchase Orders reflecting the false Reduced Pricing for Omnia Medical's acceptance, Omnia has sustained financial damages.

96.     As a direct and proximate result of Mr. Girsch's fraud and deceit, Omnia Medical has sustained damages.

97.    Mr. Girsch's actions and/or inactions and concealment were intentional, willful, wanton, malicious and performed with a reckless disregard for Omnia Medical's rights and, therefore, Omnia Medical reserves the right to seek to amend this Complaint at the appropriate time to allege punitive damages against Mr. Girsch pursuant to section 768.72, Fla. Stat.

**WHEREFORE**, Omnia Medical requests this Court to:

A.    Enter judgment in favor of Omnia Medical, finding that Mr. Girsch made fraudulent misrepresentations to Omnia Medical;

B.    Award Omnia Medical damages flowing from Mr. Girsch's fraudulent misrepresentations;

C.    Award Omnia Medical pre and post-judgment interest;

D.    Enjoin PainTEQ and/or its members from distributing or dissipating the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ and Mr. Girsch have been determined;

E.    Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to Mr. Girsch's fraudulent conduct; and

F.    For such further relief as the Court deems just and proper.

{03857864 - 1}

## COUNT VI
## Infringement of the 'D568 Patent

98.     Omnia Medical incorporates and realleges paragraphs 1 through 34 as if fully rewritten here.

99.     U.S. Design Patent No. D922,568 (the 'D568 Patent) entitled "Surgical Cannula" was duly and legally issued on June 15, 2021 and is owned by Orthocision, Inc. A true and correct copy of the 'D568 Patent is attached as **Exhibit 6**.

100.    As the exclusive licensee of the 'D568 Patent, Omnia Medical has the right to, *inter alia*, use, manufacture, and sell products covered by the claim of the 'D568 Patent and to enforce, litigate, initiate court proceedings, and/or settle all past, present, and future claims arising from or related to the 'D568 Patent.

101.    The 'D568 Patent covers the ornamental appearance of a surgical cannula and includes unique design features. FIG. 1 of the 'D568 Patent depicts a perspective view of the claimed ornamental design.

{03857864 - 1}



102.   PainTEQ's LinQ™ Products include a surgical cannula that embodies the design claimed in the 'D568 Patent. A photograph of the infringing surgical cannula is included below. A side-by-side comparison of the 'D568 claimed design and PainTEQ's surgical cannula reveals that the PainTEQ surgical cannula is substantially similar to the claimed design of the 'D568 Patent.

{03857864 - 1}

| 'D568 Patent | PainTEQ Surgical Cannula |
|---|---|
|  | |

103.    PainTEQ has been and continues to directly infringe the claim of the 'D568 Patent by making, using, selling, and/or offering to sell its LinQ™ surgical cannula.

104.    PainTEQ has gained profits by virtue of its infringement of the 'D568 Patent, and Omnia Medical has sustained damages as a direct and proximate result of PainTEQ's infringement of the 'D568 Patent.

105.    Omnia Medical will suffer and is suffering irreparable harm from PainTEQ's infringement of the 'D568 Patent. Omnia Medical has no adequate remedy at law and is entitled to an injunction against PainTEQ's continuing infringement of the 'D568 Patent.

106.    Unless enjoined, PainTEQ will continue to infringe the 'D568 Patent.

**WHEREFORE**, Omnia Medical requests:

{03857864 - 1}

A.      That the Court enjoin PainTEQ from infringing the 'D568 Patent;

B.      Enter judgment in favor of Omnia Medical, finding that PainTEQ has infringed the 'D568 Patent, in violation of 35 U.S.C. §§ 271(a) and (b);

C.      Award Omnia Medical damages flowing from PainTEQ's infringement of the 'D568 Patent, which includes:

1.      The actual loss caused by the infringement, including lost profits;

2.      The unjust enrichment caused by the infringement that is not taken into account in computing the actual loss; and

3.      A reasonably royalty;

D.      Award Omnia Medical its reasonable attorneys' fees and costs pursuant to the Stocking Agreement;

E.      Award Omnia Medical pre and post-judgment interest;

F.      Enjoin PainTEQ and/or its members from distributing or dissipating the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ have been determined;

G.      Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to PainTEQ's infringing conduct; and

H.      For such further relief as the Court deems just and proper.

34

## COUNT VII
### Infringement of the '511 Patent

107.   Omnia Medical incorporates and realleges paragraphs 1 through 34 as if fully rewritten here.

108.   Despite termination of the Stocking Agreement between PainTEQ and Omnia Medical on or about February 19, 2019, PainTEQ continues to make, use, sell, and offer to use confidential information and sell products and marketing materials developed by Omnia Medical without Omnia Medical's authorization or consent.

109.   U.S. Patent No. 11,083,511 (the '511 Patent) entitled "Method and Implant System for Sacroiliac Joint Fixation and Fusion" was duly and legally issued on August 10, 2021 and is owned by Orthocision, Inc. A true and correct copy of the '511 Patent is attached as **Exhibit 7**.

110.   As the exclusive licensee, Omnia Medical has the right to, *inter alia*, use, manufacture, and sell products/methods covered by the claims of the '511 Patent and to enforce, litigate, initiate court proceedings, and/or settle all past, present, and future claims arising from or related to the '511 Patent.

111.   The claims of the '511 Patent are directed to, *inter alia*, methods for repairing a SI joint of a patient. The method includes the insertion of a fusion implant into a portion of the SI joint.

112.   PainTEQ has infringed and continues to infringe the '511 Patent

35

directly and/or indirectly by making, using, selling, offering to sell, and marketing its LinQ™ Products.

113.   PainTEQ indirectly infringes the '511 Patent by selling, offering to sell, and marketing its LinQ™ Products to its customers with instructions for using the products, knowing that following the instructions would infringe at least one claim of the '511 Patent.

114.   PainTEQ's Surgical Technique Guide, as copy of which is attached as **Exhibit 8**, provides step-by-step instructions for repairing a SI joint of a patient that, when followed by one of PainTEQ's customers, directly infringes at least one claim of the '511 Patent.

115.   PainTEQ knows that the method described in PainTEQ's Surgical Technique Guide infringes Omnia Medical's intellectual property rights, including Omnia Medical's rights in the '511 Patent.

116.   PainTEQ's actions thus actively induce the infringement of the '511 Patent.

117.   PainTEQ has been and continues to directly infringe at least one claim of the '511 Patent by making, using, selling, and/or offering to sell its LinQ™ Products along with its accompanying instructions and services.

118.   PainTEQ has been and continues to induce infringement of at least one claim of the '511 Patent by actively and knowingly inducing others to make,

36

use, sell, or offer for sale its LinQ™ Products with the knowledge that such making, using, selling, or offering to sell its LinQ™ Products infringes the '511 Patent.

119.   PainTEQ's infringement of the '511 Patent has been willful and in disregard for the '511 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

120.   PainTEQ has gained profits by virtue of its infringement of the '511 Patent, and Omnia Medical has sustained damages as a direct and proximate result of PainTEQ's infringement of the '511 Patent.

121.   Omnia Medical will suffer and is suffering irreparable harm from PainTEQ's infringement of the '511 Patent. Omnia Medical has no adequate remedy at law and is entitled to an injunction against PainTEQ's continuing infringement of the '511 Patent.

122.   Unless enjoined, PainTEQ will continue to infringe the '511 Patent.

**WHEREFORE**, Omnia Medical requests:

A.      That the Court enjoin PainTEQ from infringing the '511 Patent;

B.      Enter judgment in favor of Omnia Medical, finding that PainTEQ has infringed or actively induced infringement of the '511 Patent, in violation of 35 U.S.C. §§ 271(a) and (b);

{03857864 - 1}

C.    Award Omnia Medical damages flowing from PainTEQ's infringement of the '511 Patent, which includes:

1.    The actual loss caused by the infringement, including lost profits;

2.    The unjust enrichment caused by the infringement that is not taken into account in computing the actual loss; and

3.    A reasonably royalty;

D.    Award Omnia Medical its reasonable attorneys' fees and costs pursuant to the Stocking Agreement;

E.    Award Omnia Medical pre and post-judgment interest;

F.    Enjoin PainTEQ and/or its members from distributing or dissipating the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ have been determined;

G.    Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to PainTEQ's infringing conduct; and

H.    For such further relief as the Court deems just and proper.

## COUNT VIII
### Breach of Contract – Stocking Agreement

123.    Omnia Medical incorporates and realleges paragraphs 1 through 34 and 98 through 122 as if fully rewritten here.

38

124. Omnia Medical and PainTEQ were parties to the Stocking Agreement, which includes at **Exhibit A**, a schedule of commissions that PainTEQ could earn based on the price it charged customers for PsiF™ products. *See* **Exhibit 3 at Exhibit A.**

125. The Stocking Agreement provided PainTEQ only with limited rights to use literature and marketing information during the term that the Stocking Agreement was in effect. The Stocking Agreement further provided that PainTEQ had to return all such material to Omnia Medical.

126. Nothing in the Stocking Agreement granted PainTEQ an express or implied right to continue using Omnia Medical's literature and marketing information for PainTEQ's own purposes following termination of the Stocking Agreement.

127. The Stocking Agreement further provided that PainTEQ would maintain the confidentiality of any confidential or proprietary information that Omnia Medical shared with PainTEQ, and maintain compliance with the Physician Payments Sunshine Act reporting requirements under 42 CFR Parts 402 and 403 for reporting the existence and amount of surgeon investor financial interests in PainTEQ.

128.    PainTEQ breached the terms of the Stocking Agreement by, among other things,[4] continuing to use confidential or proprietary information in a manner inconsistent with the terms of the Stocking Agreement, as further described in Counts VI and VII, above, with respect to the 'D568 and '511 patents, and not complying with requirements of Section 12 of the Stocking Agreement concerning compliance with the Physician Payments Sunshine Act and related regulations as described above.

129.    As a direct and proximate result of PainTEQ's breaches, Omnia Medical has suffered damages and will continue to suffer damages in an amount to be proven at trial.

**WHEREFORE**, Omnia Medical requests:

A.      Enter judgment in favor of Omnia Medical, finding that PainTEQ has breached the Stocking Agreement;

B.      Award Omnia Medical damages flowing from PainTEQ's breach of the Stocking Agreement;

C.      Award Omnia Medical its reasonable attorneys' fees and costs pursuant to the Stocking Agreement;

D.      Award Omnia Medical pre and post-judgment interest;

---

[4] Omnia Medical is currently pursuing PainTEQ's other breaches of the Stocking Agreement in Case No. 20-02805.

40

E.      Enjoin PainTEQ and/or its members from distributing or dissipating the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ have been determined

F.      Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to PainTEQ's breach of the stocking agreement; and

G.      An Order requiring PainTEQ to file the appropriate regulatory submissions to comply with the reporting requirements set forth in Section 12 of the Stocking Agreement.

H.      For such further relief as the Court deems just and proper.

**COUNT IX**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

130.    Omnia Medical incorporates and realleges paragraphs 1 through 34 and 98 through 122 as if fully rewritten here.

131.    Omnia Medical and PainTEQ are parties to the Stocking Agreement. *See* Exhibit 3.

132.    The Stocking Agreement is ambiguous about PainTEQ's reporting to Omnia Medical the pricing for which it sold Omnia Medical's products.

133.    PainTEQ, through conscious and deliberate acts, failed or refused to accurately report the price for which it sold Omnia Medical's products.  These

41

actions unfairly frustrated the Stocking Agreement's purpose and disappointed Omnia Medical's expectations.

134.   PainTEQ's breach deprived Omnia Medical of the Stocking Agreement's benefits.

135.   Omnia Medical suffered damages as a result of PainTEQ's breach of the implied covenant of good faith and fair dealing.

**WHEREFORE**, Omnia Medical requests:

A.      Enter judgment in favor of Omnia Medical, finding that PainTEQ has breached the Stocking Agreement;

B.      Award Omnia Medical damages flowing from PainTEQ's breach of the Stocking Agreement;

C.      Award Omnia Medical its reasonable attorneys' fees and costs pursuant to the Stocking Agreement;

D.      Award Omnia Medical pre and post-judgment interest;

E.      Enjoin PainTEQ and/or its members from distributing or dissipating the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ have been determined;

F.      Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to PainTEQ's breach of the stocking agreement's implied covenant of good faith and fair dealing; and

42

G.    For such further relief as the Court deems just and proper.

## COUNT X
## Ohio Deceptive Trade Practices

136.    Omnia Medical incorporates and realleges paragraphs 1 through 135 as if fully rewritten here.

137.    Omnia Medical holds the exclusive rights to the intellectual property described above, including the 'D568 Patent, and the '511 Patent.

138.    PainTEQ's unauthorized use and/or infringements of the 'D568 Patent and the '511 Patent has caused and is likely to continue to cause actual confusion as to the source of the parties' products, in violation of Ohio Rev. Code § 4165.02(A)(2).

139.    PainTEQ's unauthorized use and/or infringements of the 'D568 Patent and the '511 Patent creates the misperception that the parties are affiliated, in violation of Ohio Rev. Code § 4165.02(A)(3).

140.    In addition, PainTEQ, through its officers, employees, representatives, and/or authorized agents, has willfully and knowingly published and disseminated false representations of fact that disparage the goods, services, and business of Omnia Medical.

141.    PainTEQ's false representations of fact include, but are not limited to, statements that PainTEQ is not infringing, and has not infringed, the intellectual property rights of Omnia Medical, when, in truth and in fact, PainTEQ has done

43

exactly that.

142.    PainTEQ's false representations of fact that disparage the goods, services, and business of Omnia Medical are in violation of Ohio Revised Code § 4165.02(A)(10).

143.    Additionally, PainTEQ has engaged in an unfair method of competition and/or an unfair and deceptive act or practice by failing to comply with the disclosure requirements of the Physician Payments Sunshine Act and implementing regulations.

144.    PainTEQ's failure to comply with the disclosure requirements of the Physician Payments Sunshine Act and implementing regulations causes likelihood of confusion or misunderstanding as to the "source, sponsorship, approval or certification of goods or services" as well as the "likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another" in violation of Ohio Revised Code §§ 4165.02(A)(2) and (A)(3).

145.    As a direct and proximate result of PainTEQ's actions, Omnia Medical has suffered damages and will continue to suffer damages in an amount to be proven at trial.

146.    Additionally, by virtue of PainTEQ having willfully and knowingly engaged in deceptive trade practices in violation of Ohio Revised Code § 4165.02, Omnia Medical is entitled to an award of attorney fees pursuant to Ohio Revised

{03857864 - 1}

Code § 4165.03.

**WHEREFORE**, Omnia Medical requests:

A.      That the Court enjoin PainTEQ from engaging in any deceptive trade practices relating to Omnia Medical;

B.      Enter judgment in favor of Omnia Medical, finding that PainTEQ has engaged in deceptive business practices relating to Omnia Medical, in violation of Ohio law;

C.      Award Omnia Medical damages flowing from PainTEQ's deceptive trade practices;

D.      Award Omnia Medical its reasonable attorneys' fees and costs pursuant to Ohio Revised Code § 4165.03;

E.      Award Omnia Medical pre and post-judgment interest;

F.      Enjoin PainTEQ and/or its members from distributing or dissipating the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ have been determined;

G.      Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to PainTEQ's unfair and deceptive practices;

H.      An Order requiring PainTEQ to file the appropriate regulatory submissions to comply with the reporting requirements set forth in the Physician

Payments Sunshine Act; and

I.      For such further relief as the Court deems just and proper.

## COUNT XI
## Florida Deceptive and Unfair Trade Practices

147.    Omnia Medical incorporates and realleges paragraphs 1 through 135 as if fully rewritten here.

148.    To the extent that Florida law also applies in this dispute (or Florida law applies in lieu of Ohio law), then Omnia Medical pleads this cause of action on an alternative basis pursuant to Fed. R. Civ. P. 8(d)(2).

149.    PainTEQ's conduct as described above constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practice in the conduct of trade or commerce, in violation of section 501.204(1), *Florida Statutes*.

150.    Under Florida law, "[a]n unfair practice is one that offends established public policy and on that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Property Management, Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (internal quotations omitted).

151.    Under Florida law, "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.*

152.    PainTEQ, by its sales of products and other activities that infringe on the 'D568 Patent and the '511 Patent, has caused harm to consumers and/or other actual and/or potential end-users of Omnia Medical's products by causing them to believe that they were using and/or purchasing a product manufactured and/or distributed by Omnia Medical when, in truth and in fact, they were not. Such conduct creates a likelihood of consumer injury or detriment.

153.   Additionally, PainTEQ has engaged in an unfair method of competition and/or an unfair and deceptive act or practice by failing to comply with the disclosure requirements of the Physician Payments Sunshine Act and implementing regulations.

154.   As a direct and proximate result of PainTEQ's deceptive acts and unfair practices, Omnia Medical has suffered damages and will continue to suffer damages in an amount to be proven at trial.

**WHEREFORE**, Omnia Medical requests:

A.      That the Court enjoin PainTEQ from engaging in any deceptive trade practices relating to Omnia Medical;

B.      Enter judgment in favor of Omnia Medical, finding that PainTEQ has engaged in deceptive and unfair trade practices relating to Omnia Medical, in violation of Florida law;

C.      Award Omnia Medical damages flowing from PainTEQ's deceptive

{03857864 - 1}

trade practices;

D.      Award Omnia Medical its reasonable attorneys' fees and costs pursuant to section 501.2105, *Florida Statutes*;

E.      Award Omnia Medical pre and post-judgment interest;

F.      Enjoin PainTEQ and/or its members from distributing or dissipating the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ have been determined;

G.      Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to PainTEQ's unfair and deceptive practices;

H.      An Order requiring PainTEQ to file the appropriate regulatory submissions to comply with the reporting requirements set forth in the Physician Payments Sunshine Act; and

I.      or such further relief as the Court deems just and proper.

## COUNT XII
## Common Law Unfair Competition

155.    Omnia Medical incorporates and realleges paragraphs 1 through 135 as if fully rewritten here.

156.    PainTEQ unfairly competes with Omnia Medical through its unauthorized use and/or infringements of the 'D568 Patent and the '511 Patent.

48

157.    PainTEQ further unfairly competes with Omnia Medical through its failure to comply with disclosure requirements of the Physician Payments Sunshine Act.

158.    PainTEQ's actions have damaged Omnia Medical in the form of, *inter alia*, lost sales, harm to reputation, and trademark/copyright infringement.

159.    As a direct and proximate result of PainTEQ's actions, Omnia Medical has suffered damages and will continue to suffer damages in an amount to be proven at trial.

**WHEREFORE**, Omnia Medical requests:

A.    That the Court enjoin PainTEQ from engaging in any form of unfair competition relating to Omnia Medical;

B.    Enter judgment in favor of Omnia Medical, finding that PainTEQ has engaged in unfair competition relating to Omnia Medical;

C.    Award Omnia Medical damages flowing from PainTEQ's acts constituting unfair competition;

D.    Award Omnia Medical pre and post-judgment interest;

E.    Enjoin PainTEQ and/or its members from distributing or dissipating the proceeds of the sale until the merits of Omnia Medical's claims against PainTEQ have been determined;

F.    Impose a constructive trust on the specific and identifiable income

49

from the sale of PainTEQ and/or LinQ™ traced to PainTEQ's unfair practices; and

G.      An Order requiring PainTEQ to file the appropriate regulatory submissions to comply with the reporting requirements set forth in the Physician Payments Sunshine Act.

H.      For such further relief as the Court deems just and proper.

## COUNT XIII
## UNJUST ENRICHMENT

160.   This is an action in the alternative for unjust enrichment.

161.   Omnia Medical incorporates and realleges paragraphs 2 through 14, 22-23, 28, 31, and 33-34 as if fully rewritten here.

162.   PainTEQ knew that Omnia Medical provided products to PainTEQ at a lower price than PainTEQ was selling Omnia Medical's products to its customers.

163.   PainTEQ knew that it was gaining assets by obtaining access to and infringing on Omnia Medical's intellectual property.

164.   Despite this knowledge, PainTEQ has failed to pay Omnia Medical in full for the value of the products it sold on Omnia Medical's behalf or to compensate Omnia Medical for the value of the intellectual property and assets PainTEQ has gained through its infringement.

165.   Omnia Medical has conferred a benefit on PainTEQ by providing it products at the Reduced Price, only for PainTEQ to sell the same products to its

50

customers at a higher price without paying the fill value thereof to Omnia Medical.

166.    Omnia Medical has conferred a benefit on PainTEQ by providing it access to its confidential intellectual property, which PainTEQ used to its benefit without providing compensation to Omnia Medical for such intellectual property.

167.    PainTEQ has knowledge of the benefit and has accepted and retained the benefit conferred by Omnia Medical, thereby making it inequitable for PainTEQ to retain same without paying the value thereof.

168.    Omnia Medical is entitled to the reasonable value of the products it provided to PainTEQ and the reasonable value of the intellectual property PainTEQ stole and utilized for its own LinQ System.

**WHEREFORE**, Omnia Medical requests:

A.    That the Court enter a judgment in favor of Omnia Medical, finding that PainTEQ has been unjustly enriched;

B.    That the Court enter a judgment against PainTEQ requiring it to disgorge all profits it received from selling Omnia Medical products that were fraudulently received or that it inequitably retained from Omnia Medical regardless of the form in which those profits are being held by PainTEQ, and on all proceeds of such profits, and on all assets of Omnia Medical in PainTEQ's possession, custody, or control, including those assets PainTEQ holds due to its infringement of Omnia Medical's intellectual property, and requiring that

51

PainTEQ return such profits and assets to Omnia Medical;

C.     Award Omnia Medical damages flowing from PainTEQ's unjust enrichment;

D.     Impose a constructive trust on the specific and identifiable income from the sale of PainTEQ and/or LinQ™ traced to PainTEQ's unfair practices; and and

D.     For such further relief as the Court deems just and proper

## COUNT XIV
## Constructive Trust

169.   This is an action in the alternative for constructive trust.

170.   Omnia Medical incorporates and realleges paragraphs 1 through 168 as if fully rewritten here.

171.   PainTEQ and Omnia Medical had a unique relationship through which PainTEQ expressly promised that it would maintain a business relationship with Omnia Medical and sell Omnia Medical's products in a manner that would benefit Omnia Medical.

172.   Omnia Medical entered into the Stocking Agreement and accepted each Purchase Order in reliance thereon.

173.   A sale or acquisition of PainTEQ to a successor company may leave PainTEQ judgment proof, allowing them to avoid any potential judgment found against it in this action.

174.   PainTEQ would be unjustly enriched if it were allowed to keep the profits and assets it obtained through its fraudulent and inequitable conduct.

175.   PainTEQ would further be unjustly enriched if allowed to sell its company at a value that includes the profits it has unjustly withheld and fraudulently kept from Omnia Medical.

176.   The Court has the equitable authority to impose a constructive trust where property belonging to a person or entity is unjustly held by another person as a result of abuse of confidence, unjust enrichment, and other circumstances rendering inequitable and unfair the continuing possession and control of that property by the other person or entity.

177.   In addition, PainTEQ is improperly in possession of confidential documents and other intellectual property of Omnia Medical.

**WHEREFORE**, Omnia Medical requests:

A.      That the Court enter a Judgment imposing a constructive trust on all profits PainTEQ received from selling Omnia Medical products that were fraudulently received or that it inequitably retained from Omnia Medical, regardless of the form in which those profits are being held by PainTEQ, and on all proceeds of such profits, and on all assets of Omnia Medical in PainTEQ's possession, custody, or control, including those assets PainTEQ holds due to its infringement of Omnia Medical's intellectual property;

{03857864 - 1}

B.     That the Court enter a Judgment declaring that until the closing of this action, PainTEQ hold such profits and assets in constructive trust for satisfaction of a Judgment in this action; and

C.     For such further relief as the Court deems just and proper

## JURY DEMAND

Pursuant to Rule 38, Federal Rules of Civil Procedure, Omnia Medical, LLC demands a trial by jury of this action consisting of the maximum number of jurors permitted by law.

Dated: January 18, 2022

Respectfully submitted,

/s/ Matthew G. Davis
Matthew G. Davis
Florida Bar No. 58464
mdavis@pdtlegal.com
A. Alston Merritt, Esq.
Florida Bar No. 1010102
amerritt@pdtlegal.com
PASKERT DIVERS THOMPSON
100 North Tampa Street, Suite 3700
Tampa, FL 33602
813.229.3500 (telephone)
813.229.3502 (facsimile)

Ralph E. Cascarilla
Florida Bar No. 315303 *
rcascarilla@walterhav.com
WALTER | HAVERFIELD LLP
1301 E. Ninth Street, Suite 3500
Cleveland, OH 44114
216.928.2908 (direct dial)

{03857864 - 1}

216.916.2346 (direct facsimile)
*admitted in this case *pro hac vice*
*Counsel for Omnia Medical, LLC*

{03857864 - 1}