UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OMNIA MEDICAL, LLC,

      Plaintiff,

v.                         Case No. 8:22-cv-145-VMC-TGW

PAINTEQ, LLC, SEAN LANEVE,
and CHARLES GIRSCH,

      Defendants.

_____/

**ORDER**

This matter is before the Court on consideration of
Defendants PainTEQ, LLC, Sean LaNeve, and Charles Girsch's
Motion to Dismiss and Motion to Strike (Doc. # 18), filed on
March 28, 2022. Plaintiff Omnia Medical, LLC responded on
April 18, 2022. (Doc. # 25). Defendants replied on April 25,
2022. (Doc. # 32). The Motion is granted in part and denied
in part as explained below.

**I.**    **Background**

On April 8, 2020, PainTEQ sued Omnia in state court.
(First Action, Doc. # 1-1). That case ("the First Action"),
which is still pending, was removed to this Court on November
30, 2020. See PainTEQ, LLC v. Omnia Medical, LLC, Case No.
8:20-cv-2805-VMC-AAS (M.D. Fla. 2020). (First Action, Doc. #
1). On December 4, 2020, PainTEQ filed its second amended

complaint. (First Action, Doc. # 10). PainTEQ's second amended complaint alleges that Omnia hired former PainTEQ employees in violation of the employees' noncompetition agreements, and thereafter, Omnia acquired confidential, proprietary, and trade secret information from those individuals. (Id. at 14).

On December 18, 2020, in addition to its answer and affirmative defenses, Omnia filed counterclaims against PainTEQ for breach of contract, patent infringement, trademark infringement, unfair competition, and copyright infringement. (First Action, Doc. # 20 at 23). Omnia's counterclaims in the First Action center on the business relationship between Omnia and PainTEQ beginning around December 2016. (Id. at 25). This relationship was solidified by an April 2017 Independent Stocking Agreement ("Stocking Agreement") between the companies. (Id.). In the First Action, Omnia alleges that PainTEQ violated the Stocking Agreement by misrepresenting the sales price of Omnia's PsiF System, and by using the marketing and confidential information supplied by Omnia to sell equipment "substantially similar" to the PsiF System. (Id. at 27, 45).

On December 23, 2020, this Court issued in the First Action a Patent Scheduling Order that set a February 26, 2021,

deadline to amend pleadings. (First Action, Doc. # 27 at 2). On July 23, 2021, five months after the Court's deadline to amend the pleadings had passed, Omnia moved to extend the deadlines regarding claim construction. (First Action, Doc. # 50). In that motion, Omnia asserted that it intended to seek leave to amend its counterclaims to include two new patent infringement claims concerning U.S. Patent No. D922,568 ("'D568 patent") and U.S. Patent No. 11,083,511 ("'511 Patent"). (First Action, Id. at 6). On August 3, 2021, this Court denied Omnia's motion for extension because Omnia failed to offer good cause to extend the deadline. (First Action, Doc. # 54).

Subsequently, on August 13, 2021, Omnia filed a motion for leave to amend its counterclaims to include the new patent infringement claims for the 'D568 patent and the '511 Patent. (First Action, Doc. # 55 at 1–2). In its motion, Omnia did not allege any additional misconduct by PainTEQ or seek to assert any new non-patent claims. This Court denied Omnia's motion on October 15, 2021, because Omnia failed to establish — let alone argue the existence of — good cause for its requested amendment under Federal Rule of Civil Procedure 16(b). (First Action, Doc. # 59).

Approximately three months later, on January 18, 2022, Omnia filed this action ("the Instant Action") against PainTEQ and two new defendants, Sean LaNeve and Charles Girsch. (Doc. # 1). In the Instant Action, Omnia alleges patent infringement claims against Defendants for the 'D568 Patent and the '511 Patent. (Id. at 2). These are the same patent infringement claims asserted by Omnia in its motion for leave to amend its counterclaim in the First Action. (Id. at 5 n.1).

In addition, Omnia asserts twelve non-patent claims related to the Stocking Agreement. (Id. at 1–2). Four of these claims allege identical causes of action and use nearly identical wording as four of Omnia's counterclaims in the First Action: (1) breach of contract, (2) violation of Ohio's Deceptive Trade Practices Act, (3) violation of Florida's Deceptive and Unfair Trade Practices Act, and (4) common law unfair competition. See (First Action, Doc. # 20 at Causes of Action 7–10); (Doc. # 1 at Counts VIII, X, XI, XII). Omnia's other non-patent claims in this case are: Counts I and II for fraud in the inducement of the Stocking Agreement; Counts III, IV, and V for fraud in the inducement of purchase orders based on Defendants' alleged misrepresentation of the sales price of the PsiF System; Count IX for breach of the implied

4

covenant of good faith and fair dealing; Count XIII for unjust enrichment based on PainTEQ's alleged failure to pay Omnia for the products it sold on Omnia's behalf; and Count XIV for imposition of a constructive trust. (Doc. # 1 at 14–30, 41–42, 50–54).

On March 28, 2022, Defendants filed the instant Motion, seeking (1) to dismiss Omnia's twelve non-patent claims for — among other things — improper claim-splitting and (2) to strike certain allegations related to the patent and non-patent claims. (Doc. # 18 at 3). Omnia has responded (Doc. # 25), and Defendants have replied. (Doc. # 32). The Motion is ripe for review.

## II. **Legal Standard**

### A. **Motion to Dismiss**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

Furthermore, "the Eleventh Circuit has held that when considering a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to dismiss to a motion for summary judgment." Martin K. Eby Const. Co., Inc. v. Jacobs Civ., Inc., No. 3:05-cv-394-TJC-TEM, 2006 WL 1881359, at *1 (M.D. Fla. July 6, 2006). This is because such documents are capable of accurate and ready determination. Id. (citing Makro Cap. of Am., Inc. v. UBS AG, 372 F. Supp. 2d 623, 627 (S.D. Fla. 2005)). Thus, the Court may review documents filed in other judicial

proceedings for the limited purpose of recognizing the "judicial act" taken or the subject matter of the litigation and issues decided. Id. (citing Young v. City of Augusta, 59 F.3d 1160, 1166 n.11 (11th Cir. 1995)).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) states:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading.

Fed. R. Civ. P. 12(f).

Motions to strike are considered "drastic" and are disfavored by the courts. Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002). Specifically, "[m]otions to strike on the grounds of insufficiency, immateriality, irrelevancy, and redundancy are not favored, often being considered 'time wasters,' and will usually be denied unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." Italiano v. Jones Chems., Inc., 908 F. Supp. 904, 907 (M.D. Fla. 1995) (citations omitted); see also Augustus v. Bd. Of Pub. Instruction, Escambia Cnty., 306 F.2d 862, 868 (5th Cir. 1962)

("The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." (citation omitted)).

Because motions to strike are generally disfavored, a pleading will only be stricken if it is clear that the pleading is "insufficient as a matter of law." Ware v. Knights Enter., No. 8:12-cv-1981-JSM-MAP, 2012 WL 6213129, at *1 (M.D. Fla. Dec. 13, 2012).

## III. Analysis

### A. Count XIV

As a preliminary matter, Count XIV, which is titled "Constructive Trust," is due to be dismissed. (Doc. # 1 at 52). A constructive trust is a remedy, not a cause of action. See Lee v. Wiand, 603 B.R. 161, 175 (M.D. Fla. 2018) ("A constructive trust is a remedy which equity applies in order to do justice." (quoting Wadlington v. Edwards, 92 So. 2d 629, 631 (Fla. 1957))); see also Bernardele v. Bonorino, 608 F. Supp. 2d 1313, 1328 (S.D. Fla. 2009) ("A constructive trust . . . is imposed by operation of law as an equitable remedy[.]" (citations omitted)).

### B. Claim-Splitting Doctrine

"The 'claim splitting doctrine' applies where a second suit has been filed before the first suit has reached a final

judgment." _Zephyr Aviation III, LLC v. Keytech Ltd._, No. 8:07-cv-277-JDW-TGW, 2008 WL 759095, at *6 (M.D. Fla. Mar. 20, 2008). Under this doctrine, federal courts "have long recognized a rule prohibiting plaintiff from splitting into multiple lawsuits claims relating to the same transaction or occurrence." _Squires v. BAC Home Loans Servicing, LP_, No. 11-0413-WS-M, 2011 WL 5966948, at *5 (S.D. Ala. Nov. 29, 2011); _see also Trustmark Ins. Co. v. ESLU, Inc._, 299 F.3d 1265, 1269–70 (11th Cir. 2002). "Such a policy ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'" _Greene v. H&R Block E. Enters., Inc._, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010) (quoting _Stark v. Starr_, 94 U.S. 477, 485 (1876)). "The effect of this restriction is twofold: to ensure fairness to litigants and to conserve judicial resources." _Id._

In such instances, federal courts borrow from the res judicata test for claim preclusion and apply a two-factor test "whereby the court 'analyzes (1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions.'" _Vanover v. NCO Fin. Servs., Inc._, 857 F.3d

833, 841–42 (11th Cir. 2017) (quoting <u>Khan v. H&R Block E.</u> <u>Enters., Inc.</u>, No. 11-20335-Civ., 2011 WL 3269440, at *6 (S.D. Fla. July 29, 2011)).

Claim-splitting "may be raised on a motion to dismiss when the elements are apparent on the face of the pleading and public documents of which the court may take judicial notice." <u>U.S. Golf Learning Inst., LLC v. Club Managers Ass'n</u> <u>of Am.</u>, No. 8:11-cv-2184-VMC-EAJ, 2012 WL 768201, at *3 (M.D. Fla. Mar. 9, 2012).

In the Instant Action, Defendants do not seek to dismiss Omnia's patent infringement claims for the 'D568 Patent and the '511 Patent. Because these patent infringement claims are "properly brought in a separate action," Counts VI and VII are not at issue in the claim-splitting analysis. (Doc. # 18 at 24–25); <u>see also Abbey v. Mercedes Benz of N. Am., Inc.</u>, 138 F. App'x 304, 308 (Fed. Cir. 2005) (finding that patent infringement claims absent from a prior lawsuit were not precluded because "'[e]ach patent asserted raises an independent and distinct cause of action[.]'" (quoting <u>Kearns</u> <u>v. Gen. Motors Corp.</u>, 94 F.3d 1553, 1555 (Fed. Cir. 1996))).

Therefore, the Court will only address Omnia's non-patent claims, Counts I-V, VIII-XIV. Defendants argue that Omnia's non-patent claims in the Instant Action are based on

the same nucleus of operative facts — that is, "the same underlying business dispute" — as Omnia's counterclaim asserted in the pending First Action. (Doc. # 18 at 3). Therefore, Defendants reason, Omnia's complaint raises issues that should have been brought in the First Action. (Id. at 6). For its part, Omnia contends that it did not engage in improper claim-splitting because the events underlying the non-patent claims in the Instant Action either did not occur or were not discovered by Omnia before Omnia filed its counterclaim in the First Action. (Doc. # 25 at 2, 6).

In applying the two-factor test adopted by the Eleventh Circuit, this Court finds that Omnia has engaged in improper claim-splitting because (1) both actions involve the same parties and their privies and (2) both actions involve the same transaction or series of transaction. See Vanover, 857 F.3d at 841–42. Accordingly, the twelve non-patent claims will be dismissed.

### 1. **Both Actions Involve the Same Parties and their Privies**

First, both actions involve identical parties and their privies. In the First Action, the plaintiff is PainTEQ, LLC and the defendant is Omnia Medical, LLC. (First Action, Doc. # 10 at 1). In the Instant Action, the plaintiff is Omnia

Medical, LLC and the defendants are PainTEQ, LLC, Sean LaNeve, and Charles Girsch. (Doc. # 1 at 1-4).

Although Sean LaNeve and Charles Girsch are not named parties in the First Action, they are in privity with PainTEQ. In the Instant Action, Omnia alleges that LaNeve and Girsch were agents of PainTEQ and were "acting in the scope of such agency and with permission and consent of PainTEQ" during the time surrounding the Stocking Agreement. (Doc. # 1 at 3-4). Defendants do not dispute this principal-agent relationship in their Motion. (Doc. # 18 at 5). "A principal-agent relationship is one kind of 'substantive legal relationship' that establishes privity." Echeverria v. Bank of Am., N.A., 632 F. App'x 1006, 1008 (11th Cir. 2015) (quoting Taylor v. Sturgell, 553 U.S. 880, 894 & n.8 (2008)).

Therefore, the first prong of the two-factor test is satisfied.

2. **Both Actions Involve the Same Transaction or Occurrence**

Next, the Court looks to whether the First Action and the Instant Action arise from the same transaction or series of transactions.

"Successive causes of actions arise from the same transaction or series of transactions when the two actions

are based on the same nucleus of operative facts." <u>Vanover</u>, 857 F.3d at 842 (citing <u>Petro-Hunt, LLC, v. United States</u>, 365 F.3d 385, 395–96 (5th Cir. 2004)). Courts determine whether a series of transactions are based on the same nucleus of operative facts by considering "whether the facts are related in time, space, origin, or motivation," and whether the facts "form a convenient trial unit." <u>Petro-Hunt</u>, 365 F.3d at 396 (adopting the transactional test of the Restatement (Second) of Judgments § 24 when determining whether two suits involve the same claim or cause of action); <u>see also</u> <u>Hatch v. Boulder Town Council</u>, 471 F.3d 1142, 1150 (10th Cir. 2006) ("Under the transactional test, a new action will be permitted only where it raises new and independent claims, not part of previous transaction, based on the new facts.").

The First Action and the Instant Action are based on the same nucleus of operative facts. As the pleadings indicate, in the First Action, Omnia alleges that it began discussions with PainTEQ about forming a business relationship around December 2016. (First Action, Doc. # 20 at 25). These discussions ultimately culminated in the Stocking Agreement of April 2017. (<u>Id.</u>). Omnia alleges that, pursuant to the Stocking Agreement, PainTEQ had access to Omnia's PsiF System

and that PainTEQ was to "continuously and actively pursue the marketing" of this system. (Id. at 26–27). According to Omnia, PainTEQ misrepresented the sales price that it charged to its customers for the PsiF System and proceeded to sell its own equipment that was "substantially similar" to the PsiF System in violation of the contract. (Id. at 27, 45). Although Omnia asserts that the Stocking Agreement was terminated in February 2019, Omnia claims that it did not discover PainTEQ's misconduct and breach until September 2019. (Id. at 27).

By comparison, in the Instant Action, Omnia likewise alleges that its business relationship with PainTEQ lasted from December 2016 until the termination of the Stocking Agreement in February 2019. (Doc. # 1 at 6, 13). Further, Omnia asserts that PainTEQ and its agents agreed to "continuously and actively pursue the marketing" of the PsiF System under the Stocking Agreement. (Id. at 7). According to Omnia, PainTEQ and its agents sold the PsiF System for significantly more than what they reported to Omnia, retained the difference in value from these sales, and later sold "equipment substantially similar (or identical)" to the PsiF System in violation of the Stocking Agreement. (Id. at 10–13). However, Omnia varies its complaint in the Instant Action by alleging that PainTEQ's agents also provided false

information and promises to Omnia in December 2016 to induce Omnia to form the Stocking Agreement. (Id. at 6-7).

Even considering the variations between Omnia's counterclaim in the First Action and its complaint in the Instant Action, the claims in both actions are still based on PainTEQ's alleged misrepresentation of the price of the PsiF System and subsequent unlawful selling of "substantially similar" equipment. (First Action, Doc. # 20 at 27, 45); (Doc. # 1 at 10-13). Furthermore, all of Defendants' alleged wrongs occurred prior to the filing of Omnia's counterclaim in the First Action — that is, between December 2016 and December 2020. As Defendants correctly assert in their Motion, "every claim in both lawsuits is based on: (i) the formation of and performance under the Stocking Agreement or (ii) how the parties competed with each other after the Stocking Agreement." (Doc. # 18 at 5). Defendants' argument is accentuated by the fact that Omnia asserts four nearly identical non-patent claims in both actions. See (First Action, Doc. # 20 at Causes of Action 7-10); (Doc. # 1 at Counts VIII, X, XI, XII).

Thus, both actions arise from the same series of transactions.

### 3. **Omnia's failure to bring its non-patent claims in the First Action demonstrates its failure to timely investigate**

Nevertheless, Omnia contends that the claims in the Instant Action did not exist before Omnia filed its counterclaim in the First Action or, alternatively, Omnia could not discover the claims earlier because the Defendants concealed evidence. (Doc. # 25 at 2, 6). However, the Court is unconvinced by Omnia's seemingly contradictory arguments.

First, given the fact that Omnia alleges four nearly identical non-patent claims in both actions, it is clear that Defendants' alleged misconduct existed prior to Omnia filing its counterclaim in the First Action. See (First Action, Doc. # 20 at Causes of Action 7–10); (Doc. # 1 at Counts VIII, X, XI, XII). As discussed above, the non-patent claims that Omnia asserts in the Instant Action arose from Defendants' alleged misconduct that occurred between December 2016, when the companies first began their business relationship, and December 2020, when Omnia filed its counterclaim in the First Action. (Doc. # 1 at 6–13). Omnia's failure to plead its eight additional non-patent claims as counterclaims in the First Action evinces a lack of timely investigation – not, as Omnia suggests, the result of Defendants' concealing evidence. (Doc. # 25 at 2); see also Trustmark Ins., 299 F.3d at 1271–

72 (affirming the district court's dismissal of Trustmark's suit because Trustmark knew or should have known of ESLU's alleged breach of contract but instead "displayed excessive dilatoriness" in investigating its claims).

Second, in its response to Defendants' instant Motion, Omnia also alleges that the events supporting its non-patent fraud claims "only came to light from documents received pursuant to non-party subpoenas in the [F]irst [A]ction." (Doc. # 25 at 6). Therefore, Omnia insists that it discovered these non-patent claims "well after Omnia filed its counterclaim." (Id.). However, Omnia fails to cite any relevant case law to suggest that a motion to dismiss based on claim-splitting grounds should be denied simply because the plaintiff could not timely discover and add new claims to an earlier, pending action. Furthermore, Omnia's assertion that Defendants concealed evidence, without any factual support, is conclusory at best. (Id. at 2). Omnia neither specifies which facts were discovered through the non-party subpoenas to support its fraud claims nor when exactly it discovered those facts. (Id. at 6). As Defendants justly assert in their reply, Omnia's argument is "unsupported by any specific information whatsoever (What facts were discovered? When?)." (Doc. # 32 at 1–2). In reviewing Omnia's

counterclaim in the First Action and its complaint in the Instant Action, the Court finds that Omnia does not allege any new misconduct by Defendants after September 2019 when Omnia first discovered PainTEQ was selling "substantially similar" equipment. (First Action, Doc. # 20 at 27).

Ultimately, given this context, the Court doubts that Omnia could not have discovered Defendants' alleged misconduct prior to filing its counterclaim in the First Action on December 18, 2020. (First Action, Doc. # 20); see also Manning v. City of Auburn, 953 F.2d 1355, 1360 & n.9 (11th Cir. 1992) (holding that claims that "could have been brought" are those claims which existed at the time the original pleading is filed, regardless of when the claims were discovered, and are precluded if not advanced in the original lawsuit). The Court gave Omnia ample time to discover Defendants' alleged misconduct when it set the deadline to amend the pleadings as February 26, 2021 — nearly three months after the First Action was filed and two years after the Stocking Agreement had terminated. (First Action, Doc. # 27 at 2). Notably, when Omnia filed a motion seeking leave to amend its counterclaim in the First Action, it did not seek to add its additional non-patent claims even though it was nearly two years after the Defendants' alleged misconduct.

18

(First Action, Doc. # 55). Thus, Omnia has not even attempted to add these non-patent claims to its counterclaim in the First Action. Had Omnia wanted to pursue these additional non-patent claims against PainTEQ and its agents, Omnia should have included these claims in its motion seeking leave to amend its counterclaim in the First Action, not file a separate lawsuit.

Even if Omnia had actually sought to add these non-patent claims through its motion for leave to amend its counterclaim in the First Action, claim-splitting may still be grounds for dismissal when a motion to amend has been denied in a previous action. See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 273 F. App'x 256, 265 (4th Cir. 2008) (affirming the district court's dismissal of claims on improper claim-splitting grounds even though the plaintiff's request for leave to amend its complaint in a previous case to include those same claims was denied because the plaintiff tried to "circumvent" the court's decision).

Because the non-patent claims in the Instant Action arose prior to the filing of the First Action, Omnia could have — and should have — brought its additional non-patent claims in its counterclaim in the First Action. Thus, these claims are dismissed for improper claim-splitting.

C. **Motion to Strike**

Although the patent infringement claims are not due to be dismissed, Defendants move to strike Omnia's demands for attorney's fees and an imposition of a constructive trust within these claims. (Doc. # 18 at 20). According to Defendants, these claims are "redundant, improper, or unavailable to Omnia." (Id.).

1. **Attorney's Fees**

As Counts VI and VII of Omnia's complaint allege patent infringement claims pursuant to 35 U.S.C. § 271(a)-(b), 35 U.S.C. § 285 controls the issue of attorney's fees. (Doc. # 1 at 34, 37); see also 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). While attorney's fees for patent infringement claims are only recoverable in an "exceptional case," an award of attorney's fees is "within the sound discretion of the district court." Campbell v. Spectrum Automation Co., 601 F.2d 246, 251 (6th Cir. 1979).

In their Motion, Defendants focus solely on Florida or Ohio state law in arguing that any request for attorney's fees should be stricken. But Counts VI and VII are claims under federal law and, thus, state law is inapplicable. Defendants fail to cite any authority that supports striking

a demand for attorney's fees for patent infringement claims. Therefore, the request for attorneys' fees will not be stricken.

### 2. Constructive Trust

Under Rule 12(f), a prayer for relief may be stricken when it is not recoverable as a matter of law. See Hodge v. Orlando Utils. Comm'n, No. 6:09-cv-1059-PCF-DAB, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009) ("[A] prayer for relief not available under the applicable law is properly subject to a motion to strike.").

Defendants are correct that a constructive trust is an inappropriate remedy where recovery of damages is sought. (Doc. # 18 at 23); see also Bender v. CenTrust Mortg. Corp., 51 F.3d 1027, 1030 (11th Cir. 1995) ("Cases in which the remedy sought is the recovery of money (whether as collection on a debt or as damages) do not fall within the jurisdiction of equity . . . and the imposition of a constructive trust will generally not be the appropriate remedy."). As Omnia also seeks recovery of damages in its complaint, its demand for an imposition of a constructive trust is improper. (Doc. # 1 at 34, 37). Therefore, Omnia's request for an imposition of a constructive trust in Counts VI and VII is stricken.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants PainTEQ, LLC, Sean LaNeve, and Charles Girsch's Motion to Dismiss and Motion to Strike (Doc. # 18) is **GRANTED** in part and **DENIED** in part, as set forth herein.

(2)   Counts I–V and VIII–XIV of Omnia's complaint are **DISMISSED** for improper claim-splitting.

(3)   Omnia's request for an imposition of a constructive trust in Counts VI and VII is **STRICKEN.**

(4)   Defendants' answer to the remaining counts is due within fourteen days of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>5th</u> day of August, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

22